## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**CATHERINE WILSON,**

        **Plaintiff**

        **v.**                            **Case No. 1:12-cv-87-HJW**

**CHIPOTLE MEXICAN GRILL, INC.,**

        **Defendant**

### <u>ORDER</u>

        Pending is the defendant's "Motion for Summary Judgment" (doc. no. 17), which plaintiff opposes. Defendant has submitted proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. no. 22). Having carefully considered the record, including the parties' briefs, exhibits, proposed findings, and applicable authority, the Court will <u>grant</u> the motion for the following reasons:

### I. Background and Procedural History

        The following facts are largely undisputed.[1] In July 2011, plaintiff (age 25, female, African-American) was hired to work as a part-time crew member at the Chipotle Mexican Grill ("Chipotles") in Clifton, Ohio (doc. no. 22, ¶¶ 1, 4). Her duties included preparing food and operating the cash register. At that time,

---

        [1]Although plaintiff red-lines as "disputed" the defendant's characterization of certain facts in the proposed findings, the Court will rely on the actual facts, as shown by the evidence itself. Disputed characterizations will be noted herein.

1

plaintiff indicated she would like to take "a short leave" in the near future to go to Florida (Wilson Dep. at 121-122, 123-124). Plaintiff told the general manager Jennifer Hernandez (now Yacuzzi) that she wanted to take "some time off" in November to work at Disney World (doc. no. 22, ¶ 10), but did not specify the exact days she wanted off. When plaintiff later mentioned this to the new apprentice manger (Brent Moore) who started working there in September, Moore told her to write her request for specific days off in the request book. Plaintiff wrote that she wanted to take off November 7-16 to work at Disney World (during her fall break from school) and also wanted to take off November 24-26, which included Thanksgiving Day and several days afterward (¶ 11).[2] During the three months plaintiff worked at Chipotles, she took off a shift on several occasions by getting another person to cover it (Wilson Dep. at 183). She did not arrange to have anyone cover the requested thirteen days off in November.

Meanwhile, in August and September of 2011, plaintiff indicates the Clifton restaurant had various problems. For example, on one occasion, the restaurant had to close early for lack of food (despite a line of paying customers) because the kitchen manager "forgot" to order rice, which is a key ingredient on Chipotles' menu (Wilson Dep. at 50). Plaintiff indicates this early closing was done without obtaining permission from corporate management (Id.). After investigating the

---

2 Although plaintiff "disputes" the defendant's description of this time off as "lengthy" or "considerable" (doc. no. 22 at ¶¶ 12-15), this characterization creates no genuine dispute of material fact. It is undisputed that she requested 13 days off, including 10 days to go to Florida.

problems at the Clifton restaurant, Chipotles' corporate management terminated the general manager (Jennifer Hernandez) and the kitchen manager (Katrice Maley).[3]

In October 2011, Chipotles' corporate management brought in Russell Behrman ("Behrman") as acting manager to fix the problems and restore the restaurant to proper operation. When Behrman asked Moore for his opinion about the crew members, Moore rated plaintiff as a "low performer" (Behrman Dep. at 28).[4] During her three months at Chipotles, plaintiff had been counseled several times about her "attitude" (Wilson Dep. at 221).[5]

Plaintiff indicates that when the new manager "got in there, nobody was getting approved [for] anything. . .we were . . .told. . . the store was a shipwreck

---

**3** Although plaintiff red-lines as "disputed" the assertion that the restaurant had "poor leadership," was in "poor condition," or was "unclean, disorganized, and operating below standard" (¶¶ 5,15), these alleged background facts are not "material" in this case. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. Anderson, 477 U.S. at 248 (explaining that a fact is "material" if it is outcome determinative under applicable law).

**4** Plaintiff's subjective opinion of her own job performance is not relevant to the analysis and creates no genuine dispute of material fact.

**5** Although plaintiff "disputes" this (¶¶ 28-30), the record reflects that at least three different managers (two of whom were African-American) counseled plaintiff about her confrontational "attitude" with people. At one point, plaintiff herself indicated in her "developmental journal" that she thought her "attitude was better" (¶ 31), which suggests that she was aware it had needed improving (doc. no. 17-13). Plaintiff's explanation for her red-lining is that she had received no written warnings about her attitude. This provides no basis to "dispute" the fact that she was verbally counseled by various managers about her attitude.

and none of us was going anywhere until the store was back in order" (Wilson Dep. at 76). Nonetheless, on October 17, 2011, plaintiff asked Behrman about taking off thirteen days in November (Wilson Dep. at 141, 239). Moore was also present for this conversation. Behrman told her he could not approve such an extended absence. As Behrman describes it, plaintiff became angry and told him that even without his approval, she was going to Florida. Plaintiff told them she was "done" with Chipotles and walked out. Based on plaintiff's statements, Behrman understood that plaintiff had just quit (Behrman Dep. at 63 "My understanding was that she had quit."). In the manager's log on October 17, 2011 (doc. no. 17-8), Behrman recorded that:

> I noticed several "request offs" in our book for over a dozen shifts & told Catherine that I cannot fulfill her requests. She is not a top performer & the overall idea of getting this restaurant in order is to ensure that everybody is participating to the fullest & that most requests throughout our roster, at the time, probably will not be fulfilled. Catherine then told me that she will not be working w/us anymore. Therefore, we terminated.

On her termination form, he listed plaintiff's reason for termination as "Voluntary – dissatisfied with hours" (doc. no. 17-9).[6] Plaintiff admitted at deposition that she had insisted to Behrman and Moore that she "had to have those days off" to go to Disney World (Wilson Dep. at 239 Q: So you did tell him that you had to have those days off? A: Yes).

---

[6] Although plaintiff "disputes" that she quit (¶¶ 16-24), she admits that the proposed findings accurately set forth Behrman's entry.

Plaintiff returned several days later when Behrman was not on duty. She worked several hours of a previously scheduled shift but went home early (Wilson Dep. at 236). When she showed up again on October 22, 2011, Behrman was surprised to see her. Plaintiff became very angry when she saw that she had been removed from the schedule. She argued with Behrman about whether she had previously "quit." She acknowledges that she was "very combative," "emotional," and "loud" in view of customers (Wilson Dep. at 278-282 Q: You described this earlier as combative? A: Very.). She acknowledges that her tone of voice was "high" for a restaurant (Id. at 282, 284). According to Behrman and several crew members, plaintiff was angry, loud, disrespectful, and used profanity. Behrman told her he would have a police officer escort her out if she refused to leave; plaintiff acknowledges this (Id. at 281). Plaintiff then swore at him and threatened to call the company's complaint hotline. She claims that as she left, Behrman made an offensive comment to her (i.e. calling her a "black bitch dyke"). Behrman denies making any such comment (Behrman Dep. at 49, indicating he had "never used those same words in a sentence in my entire life"). Although the restaurant was fully staffed and serving customers at the time, and although plaintiff claims that Behrman "yelled" this comment inside the restaurant in a "loud" tone of voice (Wilson Dep. at 286; see also, doc. no. 17-14), plaintiff has not produced any witness who heard this alleged comment.[7]

---

7 In her brief, she asserts that the comment was made in a "a voice loud enough for others to hear" (doc. no. 21 at 6).

After plaintiff called the Chipotles' internal complaint line about being treated "unfairly," Area Manager Herman Mobbs (who is African-American) investigated the matter the next day (Mobbs Dep. at 42-43). He supervised fifteen restaurants in the Northern Kentucky and Cincinnati area (Id. at 7). He interviewed Moore, Behrman, plaintiff, and two other crew members who had observed the incident. His report indicates he "attempted to speak with every crew member that worked on the day/time in question" (doc. no. 17-19). Plaintiff acknowledges that Mobbs interviewed her about what happened (Wilson Dep. at 156-157).

Mobbs indicates that when he asked Behrman about the incident, Behrman explained that plaintiff was upset because she was not given the extended time-off she wanted (Mobbs Dep. at 40-41). Behrman described plaintiff's subsequent inappropriate behavior and loud angry comments in view of customers, and indicated that even if she had not previously quit, he would have fired her for such behavior (Id.). He denied making any offensive comment to her (Id. at 49). Mobbs checked with several other crew members at the restaurant, who essentially corroborated Behrman's version of events, including that plaintiff was loud, disrespectful, and used profanity (Id. at 40, 45). None of the people interviewed by Mobbs indicated that they had heard any offensive comment by Behrman.

Mobbs indicates that when he spoke with plaintiff, she admitted she had told Behrman and Moore on 10/17 that "if she wasn't going to be able to get the time off, she was not going to come into work" (Mobbs Dep. at 47, Q: Did you understand that to mean she was going to quit? A: That's how it sounded to me. If

6

you don't come to work, you abandon your job.). Moore confirmed to Mobbs that plaintiff had indicated on 10/17 that "she was going to just quit" if her time off was not granted (doc. no. 17-19, Report). Mobbs determined that plaintiff had "informed them both [Moore and Behrman] she would be resigning if the time was not granted" (Id.). Mobbs also determined that when plaintiff returned to the restaurant several days later, Behrman had "reminded her of her statement of resigning if she was not granted the time off. . . [she] became very upset and was overheard using profanity" (Id.).

Mobbs indicates that when he spoke with plaintiff, she claimed she had been "extremely respectful" in her interaction with Berhman and "never used profanity" (doc. no. 17-19, Report). Although she told Mobbs to check with crew member Ryan Heard (who is African-American), Ryan confirmed to Mobbs that plaintiff had used profanity repeatedly. Mobbs indicated in his report that "[b]ased on the results of my investigation, [plaintiff's] statement was not true" (Id.). He concluded that "[a]s a result of [her] inappropriate behavior on the day in question, I would not recommend allowing her to return to work for Chipotle. . . [she] should have conducted herself in a professional manner – and this did not happen." (Id.). Based on his investigation, Mobbs determined that plaintiff's employment 'termination should stand."

On January 30, 2012, plaintiff filed a four-count federal complaint, alleging gender and race discrimination under Title VII and Ohio law (doc. no. 1). In her complaint, plaintiff alleges she filed a charge with the Equal Employment

7

Opportunity Commission ("EEOC") on October 25, 2011, and that a "Dismissal and Notice of Rights" was issued less than a week later on October 31, 2011.[8] After discovery concluded, Chipotles filed the present motion for summary judgment. The motion is now fully briefed and ripe for consideration.

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

The moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In doing so, courts must distinguish between evidence of disputed material facts and mere "disputed

---

8 **Plaintiff has failed to attach a copy of the "Dismissal and Notice of Rights" to her complaint.**

matters of professional judgment," i.e. disagreement as to legal implications of those facts. <u>Beard v. Banks</u>, 548 U.S. 521, 529 30 (2006).

On summary judgment review, the court must determine whether the evidence presents a sufficient dispute of material fact so as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>Id</u>. at 248. A mere scintilla of evidence in support of a party's claim is insufficient to survive summary judgment, as there must be enough evidence that a jury could reasonably find for the party. <u>Id</u>. at 252. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## III. Relevant Law

### A. Statutes

Title VII of the Civil Rights Act of 1964 ("Title VII") provides in relevant part that an employer may not "discharge . . . or otherwise . . . discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . race [or] sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, Ohio law makes it unlawful "[f]or any employer, because of the ... race [or] sex ... of any person ... to discriminate against that person with

9

respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio R.C. § 4112.02(A). Typically, resolution of the federal claims will resolve the state claims, as the same evidentiary standards and burdens of proof apply. Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008) ("[a]ll references throughout this opinion to Title VII are therefore equally applicable to the plaintiffs' claims under Ohio Revised Code § 4112"); and see, e.g., Francis v. Davis H. Elliot Construction Co., 2013 WL 941527, *4 (S.D.Ohio) (same).

### B. Evidentiary Burden-Shifting Framework

Employment discrimination claims may be based upon direct or indirect evidence. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences," Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004), whereas indirect evidence requires the drawing of an inference, Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003).

For claims based on indirect evidence, the burden shifting evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. A plaintiff must first establish a prima facie case of employment discrimination. Upon doing so, the burden shifts to the employer to "articulate a nondiscriminatory reason for its action." Harris v. Metro. Gov. of Nashville & Davidson Cty., Tenn., 594 F.3d 476, 485 (6th Cir. 2010). The plaintiff must then rebut the proffered reason by pointing to sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual.

10

The ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 153 (2000). Plaintiff must "show that the motive to discriminate was one of the employer's motives" for the adverse action, i.e., was a "motivating factor." <u>Univ. of Texas S.W. Med. Center v. Nassar</u>, 133 S.Ct. 2517, 2525-26, 2013 WL 3155234, *7 (citing 42 U.S.C. § 2000e–2(m) which provides that "an unlawful employment practice is established when the complaining party demonstrates that race . . . [or] . . . sex . . .  was a motivating factor for any employment practice, even though other factors also motivated the practice").

<u>IV. Discussion</u>

<u>A. No Direct Evidence</u>

Although plaintiff suggests that she has direct evidence, the record does not support her contention. For example, plaintiff claims another employee told her that at some unspecified time, Behrman was asked for help because there was a long line of customers and that Behrman said "to call when them, when they were out of the line" (Wilson Dep. at 70). Plaintiff indicates that she heard from another employee that "at the time the people in line was African-Americans," and therefore, she attributes discriminatory meaning to Behrman's alleged comment. Even supposing this double hearsay were somehow admissible,[9] it is quite vague and subject to more than one plausible interpretation. The comment would require

---

[9] Plaintiff indicates she did not hear this comment. She learned of it from another crew member Deonsae, who in turn, heard this story from another crew member LaKeesha (Wilson Dep. at 70 Q: So this is what Deonsae told You? A: Yes).

multiple inferences to have the meaning urged by plaintiff and is not direct evidence.[10] Plaintiff admits she did not hear the comment and does not know the race of any people in the line (Wilson Dep. at 165).[11]

As for plaintiff's contention that Behrman allegedly made an offensive remark to her after she was "very combative, loud, and angry," Behrman denies responding in kind. Regardless, this incident occurred five days *after* plaintiff had indicated she was quitting her job (i.e., she had told Behrman and Moore that she "had" to go to Florida and was "done" with Chipotles). Based on plaintiff's statements, Behrman had recorded in the manager's log on October 17, 2011, that plaintiff had voluntarily quit. Plaintiff admitted at deposition that Behrman had never made an offensive remark to her until October 22 (Wilson Dep. at 169 Q: There were no comments to you before that date? A: No). Given the timing and context, this isolated comment cannot be used as "direct" evidence that she was "terminated" due to race or gender discrimination. Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004) ("[a]s a general rule, a single stray comment, made outside the context of the decision-making process, does not constitute direct evidence of discrimination."). Chipotles asserts that multiple

---

10 Plaintiff's suggested interpretation amounts to nothing more than speculation and personal belief. See Chappell v. GTE Products Corp., 803 F.2d 261, 268 (6th Cir. 1986) (holding that personal beliefs, conjecture and speculation are insufficient to support an inference of discrimination).

11 The evidence does not reflect the existence of a discriminatory work environment where employees frequently made derogatory or discriminatory remarks about females or African-Americans. In fact, plaintiff estimates that the workforce at the Clifton location was 75% African-American.

assumptions and inferences would be required for the alleged comment on 10/22 to have any connection with events on 10/17 (doc. no. 22 at 10, 22). The United States Supreme Court has repeatedly explained that Title VII is not a "general civility code" and that "the sporadic use of abusive language" is "legally insufficient to obtain relief under Title VII." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Plaintiff must proceed under the burden-shifting framework for claims based on indirect evidence.

### B. Prima Facie Case

To establish a prima facie case of employment discrimination under a disparate treatment theory with indirect evidence, plaintiff must show that (1) she was a member of a protected class (i.e. female, African-American); (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) she was replaced by someone outside her protected class, or was treated differently than similarly situated, nonprotected employees. White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008), cert. denied, 129 S.Ct. 2380 (2009). The parties do not dispute that the plaintiff is female and African-American, and that she was qualified for her position. Chipotles asserts that plaintiff has failed to make out a prima facie case at the second and fourth steps.

### 1. No Adverse Action

Chipotles asserts that plaintiff quit her job and cannot show that she suffered any "adverse employment action." See Kocsis v. Multi–Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996) (the employee must show she was subjected to a

13

"materially adverse change in the terms or conditions of her employment"); Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998).

Here, the evidence reflects that plaintiff expressed the intention to quit, and her manager reasonably understood that plaintiff had in fact quit. Plaintiff admittedly told both managers (Behrman and Moore) that she had to have the time time off to go to Florida and that she would not be working at Chipotles anymore if she was not given the requested time off (Wilson Dep. at 239). Behrman indicated he could not give her that much time off. Although plaintiff argues that she did not quit because she did not use the precise words "I quit" (doc. no. 21 at 5), this argument is specious. Plaintiff did not need to use any specific words in order to quit. Her comments and actions were sufficient to convey such meaning. Hammon v. DHL Airways, Inc., 165 F.3d 441, 447 (6th Cir. 1999) (an employee can "constructively resign" by refusing to comply with her employer's instructions or by abandoning her position). When Mobbs later asked plaintiff about it, she confirmed that she had told Behrman and Moore that "if she wasn't going to be able to get the time off, she was not going to come into work" (Mobbs Dep. at 47). Like Behrman, Mobbs reasonably understood plaintiff to have stated that she was quitting (Id. "That's how it sounded to me.").

When an employee voluntarily resigns, she cannot claim that she suffered an adverse employment decision. See Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 555 (6th Cir. 2008), cert. denied, 555 U.S. 1171 (2009) (affirming summary judgment for employer because plaintiff had quit); Hammon, 165 F.3d at 447

14

(plaintiff quit, and thus, could not establish a prima facie case); <u>Sander v. Gray Television Group, Inc</u>. 478 Fed.Appx. 256, 263 (6th Cir. 2012) ("If Sander quit, then he did not suffer an adverse employment action"); <u>Watson v. City of Cleveland</u>, 202 Fed.Appx. 844, 854 (6th Cir. 2006) (same, observing that plaintiff "chose to quit"). Plaintiff has not established a prima facie claim at the second step.

### 2. Not Replaced or Treated Differently

Even assuming that plaintiff could show a genuine dispute of material fact at the second step, her race and gender discrimination claims also fail at the fourth step because she points to no evidence that she was "replaced" by someone outside her protected class or "treated differently" than any similarly situated employees. This step is inherently contextual and generally requires that the plaintiff and any comparative employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct." <u>Perry v. McGinnis</u>, 209 F.3d 597, 601 (6th Cir. 2000) ("the comparative employees offered by plaintiff must be similarly-situated in all relevant respects") (citing <u>Ercegovich v. Goodyear Tire & Rubber Co</u>., 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff has not shown that she was replaced by someone outside her protected class or treated differently than any similarly situated employees. Chipotles points out that the next four crew members hired by Behrman were all African-American, and three of them were female: Kameelah Williams (female), Lakeesha Zanders (female), Mia Burton (female), and Michael Coats (male) (doc.

15

no. 17 at 17, citing Behrman Dep. at 86). The evidence does not reflect that plaintiff was replaced by someone outside the protected class.

The evidence also does not reflect that any other crew members were given a comparable amount of time off. Plaintiff admits she is unaware of any other crew member taking a comparable number of "days off in a row" (Wilson Dep. at 184). In fact, she acknowledges that she does not know if any other crew member got *any* time off (Id. at 153 Q: Was anyone able to get time off from Russell Behrman? A: "I don't know."). Behrman testified that he did not approve any other comparable requests for time off (Behrman Dep. at 81). Although plaintiff speculates that a crew member named "Chad Kohls possibly could have been gone for four days" (Wilson Dep. at 184), she also indicated that Chad had found someone to cover his shifts (Id. at 185), which plaintiff did not do with respect to her request for 10 days off to go to Florida.

Although plaintiff argues that Behrman terminated another crew member (Tyler Bell, white male) for "not wanting to work the hours posted for him" and marked him as "eligible for rehire" (doc. no. 21 at 9, citing Wilson Dep. at 176), Chipotles points out that Wilson's speculation is incorrect in every aspect (doc. no. 23 at 4). Behrman did *not* terminate Bell; Moore did (doc. no. 23-2, Mobbs Affidavit, ¶2). Bell was listed as "Unable to Perform Job," not "Dissatisfied with Hours." Bell was marked as "*ineligible*" (not eligible) for rehire (Id.). A plaintiff cannot withstand summary judgment by relying on mere "conjecture or conclusory allegations." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir.

16

2008); Travelodge Hotels, Inc. v. Govan, 155 Fed.Appx. 235, 237 (6th Cir. 2005) (observing that briefs which are "simply filled with conclusory allegations ... failed to present sufficient evidence" to withstand summary judgment).

Plaintiff also fails to mention that no other crew member had erupted in a "very combative, loud, angry, emotional" profanity-laced tirade against the manager for 9-12 minutes while in view of customers. Chipotles aptly points out that plaintiff has produced no evidence that any other crew member was allowed to do this without being terminated (doc. no. 17 at 17, citing Wilson Dep. at 277). In sum, plaintiff has not shown that she was "treated differently" than any similarly situated employees due to her race or gender. See, e.g., Weatherby v. Fed. Ex., 454 Fed.Appx. 480, 488 (6th Cir. 2012), cert. denied, 133 S.Ct. 896 (2013), r'hrg denied,133 S.Ct. 1749 (2013) (affirming summary judgment for employer because plaintiff did not show she was treated differently than any similarly situated male and/or Caucasian employees).

Plaintiff merely alleges in conclusory fashion that she was not given extended time off "because of her race and gender." She relies largely on her own deposition testimony, which merely reiterates her subjective belief that she was somehow "discriminated against" because she wasn't given the time-off she demanded. Such testimony is insufficient to raise any genuine dispute of material fact because it consists merely of her personal beliefs, conjecture, and speculation. This cannot help her avoid summary judgment. See Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 (6th Cir. 1986) (an inference of discrimination

17

cannot be supported merely by the plaintiff's own personal belief and speculation); Watson, 202 Fed.Appx. at 854 (same).

To survive summary judgment, it is plaintiff's burden to "present affirmative evidence." Anderson, 477 U.S. at 257; White, 533 F.3d at 389 (the "non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial"); Lewis v. Philip Morris Inc., 355 F.3d 515, 533 (6th Cir. 2004) (plaintiff must "show sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation"), cert. denied, 543 U.S. 821 (2004). Even construing all reasonable inferences in her favor for purposes of summary judgment, plaintiff has failed to establish a prima facie case. See, e.g., Weatherby, 454 Fed.Appx. at 489 (plaintiff failed to show that any protected status was a motivating factor for her termination, and thus, failed to present a prima facie case of race or gender discrimination).

### 3. Legitimate Nondiscriminatory Reason

Based on her statements, Behrman reasonably believed that plaintiff had quit. Chipotles was under no obligation to reinstate an employee who had voluntarily resigned. Pownall v. City of Perrysburg, 63 Fed. Appx. 819, 822 (6th Cir. 2003) ("once Pownall's voluntary resignation took effect, she had no right to revoke it, and the City had no duty to reinstate her"). Moreover, Chipotles indicates that even if plaintiff had not quit, she would have been fired for angrily arguing in a loud and disrespectful manner with her manager. Even assuming that the refusal

18

to reinstate plaintiff could be construed as an "adverse employment action," Chipotles has offered a legitimate non-discriminatory reason, namely plaintiff's admittedly inappropriate behavior. The evidence reflects that plaintiff was disruptive, disrespectful, and insubordinate. See, e.g., <u>Arnold v. Marous Bros. Const., Inc</u>., 211 Fed.Appx. 377, 381 (6th Cir. 2006) ("This court has confirmed that insubordination can constitute legitimate reason for termination"). Chipotles' Area Manager Herman Mobbs investigated plaintiff's allegations, determined that plaintiff had behaved inappropriately, and decided that her termination should stand. As the Sixth Circuit Court of Appeals has observed, "time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." <u>Corell v. CSX Transp., Inc</u>., 378 Fed. Appx. 496, 505 (6th Cir. 2010) (quoting <u>Risch</u>, 581 F.3d at 399).

   <u>4. No Pretext</u>

   Plaintiff has not shown that this decision was a pretext for discrimination. To do so, she must show that the stated reason: (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) was insufficient to motivate its action. <u>White</u>, 533 F.3d at 393. A plaintiff may show pretext by offering evidence that challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." <u>Wexler v. White's Fine Furniture, Inc</u>., 317 F.3d 564, 578 (6th Cir. 2003) (en banc). "Pretext is a commonsense

inquiry: did the employer fire the employee for the stated reason or not?" <u>Chen v. Dow Chemical Co</u>., 580 F.3d 394, 400 n. 4 (6th Cir. 2009).

Plaintiff relies largely on her own allegations and speculation and has not produced evidence that would allow a jury to reasonably doubt the employer's explanation. She testified that she had insisted to Behrman and Moore that she "had to have those days off" (Wilson Dep. at 239). When Mobbs investigated, she admitted she had told Moore and Behrman that if she could not get the time off, "she was not going to come into work" (Mobbs Dep. at 47). Even though plaintiff challenges Behrman's understanding that she had quit, the evidence reflects that he believed she had quit (doc. no. 17-18 "Catherine then told me that she will not be working w/us anymore."). When Mobbs looked into the matter, he came to the same conclusion. An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. <u>Allen v. Highlands Hosp. Corp</u>., 545 F.3d 387, 398 (6th Cir. 2008) (quoting <u>Michael v. Caterpillar Finc'l Serv. Corp</u>., 496 F.3d 584 (6th Cir. 2007), cert. denied, 552 U.S. 1258 (2008)). "The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained of action." <u>Id</u>.

To the extent plaintiff challenges Mobbs' decision "to let her termination stand," she has pointed to no objective evidence that would cast any doubt on his explanation. Mobbs conducted a reasonable investigation and found that "[d]uring a discussion with Russ and Brent, Catherine informed them both she would be

20

resigning if the time was not granted" (doc. no. 17-19). He also determined that plaintiff had subsequently behaved inappropriately and that she had not told him the truth about her own behavior at the restaurant (Id). Although she initially insisted she had been "respectful" with Behrman, plaintiff later admitted at deposition that she had argued angrily and been "very combative," "emotional," and "loud" (Wilson Dep. at 278-282).[12] Given Mobbs' investigation, his decision had a basis in fact. Plaintiff admitted at deposition that it is "unprofessional" to yell and and use profanity when you are upset or angry in the workplace (Id. at 290-291). Plaintiff points to no evidence indicating that her own inappropriate behavior did not actually motivate Mobbs' decision or that it was insufficient to do so. Plaintiff has not shown any pretext. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) ("a reason cannot be proved to be "a pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason').

## IV. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the relevant issues. The Court finds that oral argument is not necessary. Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992); Schentur v. United States, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio))

---

12 The Oxford English Dictionary defines "respectful" as "full of or exhibiting respect; deferential." It defines "combative" as "fond of fighting, pugnacious."

21

(observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the defendant's "Motion for Summary Judgment" (doc. no. 17) is **GRANTED**, with court costs to plaintiff. This case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

<u>        s/Herman J. Weber        </u>
Herman J. Weber, Senior Judge
United States District Court

22